IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHESTER A. JOHNSON, | No. CIV S-07-1643-MCE-CMK-P |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| D.K. SISTO, et al., | |
| Respondents. | |
| _____/ | |

      Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the denial of parole in 2006. Pending before the court are petitioner's petition for a writ of habeas corpus (Doc. 1), respondent's amended answer (Doc. 10), and petitioner's reply (Doc. 15).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1

# I. BACKGROUND

Petitioner, who is serving concurrent life sentences for separate murders, appeared before the Board of Prison Terms ("Board") on August 8, 2006, for a subsequent parole eligibility hearing. Petitioner was represented by counsel at the hearing. Petitioner's counsel stipulated to the facts related to the commitment offenses as outlined in prior parole hearing transcripts. In finding petitioner unsuitable for parole, the Board noted: (1) the facts of the commitment offense; (2) petitioner's pre-commitment criminal record; (3) petitioner's institutional behavior; (4) lack of current psychological evaluation; and (4) petitioner's failure to participate in self-help programming. As to the commitment offenses, the Board stated:

> . . . Number one, your commitment offenses are horrendous. You killed two people. We believe you haven't yet come to terms with the second offense, with the doctor. You went on a crime spree. It was awful. Multiple victims were attacked. You carried out the offense in a dispassionate and calculated manner. You're traveling with your girlfriend and both of you end up pointing fingers at each other with regards to the second offense. The offense was carried out in a manner that demonstrated disregard for human suffering and it was a crime spree for drugs and money. You can't put a value on a human life, not either in drugs or money. Conclusions are drawn from the Statement of Facts that indicated from the report earlier, came from the May 2006 [parole suitability hearing] calendar. And both summaries of the offenses are included there, with which, Mr. Johnson, forced his way into an apartment of Mr. Siliphont, evidently to secure drugs and Johnson fatally shot that victim. As well, the same roughly period of a week or so, he did a carjacking and ended up killing Dr. Olsen and then went all the way across the country to Muskegon, Michigan, where he was subsequently extradited. . . .

Regarding petitioner's pre-conviction criminal record, the Board stated:

> . . . We discussed the prior record of Mr. Johnson. He does have a juvenile record. Most of that appears to be fighting, malicious destruction, stealing a cap pistol, starting a fire supposedly and more fighting. So there is somewhat a degree of violence of a record of violence and assaultive behavior in a – on a juvenile. It appears he has a history of unstable relationships with others. He's obviously failed grants of probation and parole and has failed to profit from society's previous attempts with regards to juvenile probation interaction and an adult, as well as on parole and prior prison terms. . . .

///

As to institutional behavior, the Board stated:

> . . . With regards to institutional behavior, Mr. Johnson has received five 115's [disciplinary violations], the last being in July of 2002 [for falsifying documents]. 128(a)'s, he has received four, the last being in March of '98. 2002 is not long enough for us, Mr. Johnson. You need to distance yourself from the disciplinaries a little bit more. And you actually, as the Commissioner pointed out earlier, knew you were doing wrong and you still chose to do so. And one of the issues that we are often concerned about as a Parole Board Panel is, if you can't follow the rules, no matter how insignificant you may think they are in the institution, how can you follow them outside?

The Board next addressed petitioner's institutional programming:

> . . . We are also concerned with your lack of AA and NA programming within the institution. You had a significant history of alcohol or substance abuse issues on – prior to this. And so, one of our recommendations would be that you participate in some kind of substance abuse program of your choosing. It doesn't have to be AA or NA but something similar. . . .

As to the psychological evaluation, the Board noted:

> . . . In regards to the psychiatric evaluation, I think we've all indicated that it is an old evaluation and probably don't do you justice. We will be recommending a new evaluation for your, sir.

The Board deferred further consideration of parole eligibility for two years.

Petitioner filed a petition for a writ of habeas corpus challenging the Board decision in the Alameda County Superior Court. In denying relief, the state court stated:

> The Petition for writ of habeas corpus is denied. The Petition fails to state a prima facie case for relief. Even though Petitioner has submitted numerous documents in support of his Petition, review of the transcripts provided and documents pertaining to the August 8, 2006, hearing, indicate that there was no abuse of discretion by the Board of Prison Terms. The factual basis of the BPT's decision granting or denying parole is subject to a limited judicial review. A Court may inquire only whether some evidence in the record before the BPT supports the decision to deny parole. The nature of the offense alone can be sufficient to deny parole. (In re Rosenkrantz (2002) 29 Cal.4th 615, 652, 658, 682). The record presented to this Court for review demonstrates that there was certainly some evidence, including, but not limited to the committing offense, Petitioner's prior criminal history, Petitioner's disciplinary record while in prison, Petitioner's insufficient participation in drug and alcohol programming while incarcerated, and Petitioner's continuing minimization

of his conduct and behavior relating to the second homicide.  There is nothing in the record that indicates that the Board's decision was arbitrary or capricious, nor that Petitioner's equal protection or due process rights were violated.  Thus, Petitioner has failed to meet his burden of sufficiently proving or supporting the allegations that serve as the basis for habeas relief.

The California Court of Appeal and California Supreme Court both summarily denied relief. Respondents admit that the petition is timely and that the claims are exhausted.

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not, however, apply in all circumstances.  When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

/ / /

/ / /

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412) . "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

/ / /

/ / /

/ / /

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. <u>See id.</u> at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. <u>See id.</u> In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. <u>See id.</u> at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. <u>See Benn v. Lambert</u>, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. <u>See id.</u> If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. <u>See id.</u>

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. <u>See Wiggins v. Smith</u>, 539 U.S. 510, 520 (2003). While declining to rule on the issue, the Supreme Court in <u>Williams</u>, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. <u>See Williams</u>, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. <u>See id.</u> at 410; <u>see also Lockyer v. Andrade</u>, 538 U.S. 63, 75-76 (2003). An "unreasonable application of" controlling law cannot necessarily be found

even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. at 75. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

### III.  DISCUSSION

Petitioner argues that the Board's decision was not based on some evidence of his dangerousness at the time.  Respondents argue: (1) petitioner does not have a federally protected liberty interest in parole; (2) petitioner received all the process he was due because he was provided notice of the hearing and an opportunity to be heard; (3) even if the "some evidence" standard applies, the factors cited by the state court meet this standard.

In Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc), the Ninth Circuit sitting en banc held that there is no federal stand-alone substantive due process right to parole. See 603 F.3d 546, 555 (9th Cir. 2010) (en banc).  Any substantive due process interest in parole arises solely from state law creating the right.  See id.  The Ninth Circuit overruled its prior decisions in Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003), Sass v. Bd. of Prison Terms, 461 F.3d 1123 (9th Cir. 2006), and Irons v. Carey, 505 F.3946, 851 (9th Cir. 2007), "[t]o the extent [they]. . . might be read to imply that there is a federal constitutional right regardless of whether state law entitles the prisoner to release. . . ." Hayward, 603 F.3d at 555.

Turning to whether California's parole scheme creates any substantive due process rights, the Ninth Circuit stated: "Although the due process clause does not, by itself, entitle a prisoner to parole in the absence of some evidence of future dangerousness, state law may supply a predicate for that conclusion." Id. at 561.  The court then discussed California law, including the California Supreme Court's decisions in In re Lawrence, 44 Cal.4th 1181 (2008),

and In re Shaputis, 44 Cal.4th 1241 (2008), and noted that ". . . as a matter of state law, 'some evidence' of future dangerousness is indeed a state *sine qua non* for denial of parole in California." Id. at 562.  The court then provided the following instructions for resolving parole claims in the context of AEDPA:

> Since the "some evidence" requirement applies without regard to whether the United States Constitution requires it, we in this case, and courts in this circuit facing the same issue in the future, need only decide whether the California judicial decision approving the . . . decision rejecting parole was an "unreasonable application" of the California "some evidence" requirement, or was "based on an unreasonable determination of the facts in light of the evidence."
>
> Id.

The en banc court concluded that Hayward had properly been denied parole because the nature of the commitment offense combined with an unfavorable psychological evaluation provided "some evidence" under California law of future dangerousness.  See id.

Interpreting the en banc decision in Hayward, the Ninth Circuit in Person v. Muntz stated: "By holding that a federal habeas court may review the reasonableness of the state court's application of the 'some evidence' rule, Hayward, necessarily held that compliance with the state requirement is mandated by federal law, specifically the Due Process Clause."  606 F.3d 606, 609 (9th Cir. 2010) (per curiam).  The court observed that "[t]he principle that state law gives rise to liberty interests that may be enforced as a matter of federal law is long-established."  Id.

As has been clearly stated by the Ninth Circuit, California law provides the contours of the substantive due process right to parole at issue in this case.  Under California law, one year prior to an inmate's minimum eligible parole release date, the Board will set a date for an eligibility hearing.  See Cal. Penal Code § 3041(a).  A release date shall be set unless release currently poses an unreasonable risk of danger to society.  See Cal. Penal Code § 3041(b).  The paramount concern in determining parole suitability in California is public safety.  See In re Dannenberg, 34 Cal.4th 1061 (2005).  This requires an assessment of the inmate's current

dangerousness. See In re Lawrence, 44 Cal.4th at 1205. Such an assessment requires more than "rote recitation of the relevant factors with no reasoning establishing a rational nexus between those factors and the necessary basis for the ultimate decision – the determination of current dangerousness." Id. at 1210.

California regulations set forth various circumstances which tend to show suitability and others which tend to show unsuitability. See Cal. Code Regs., tit 15 § 2402(c)-(d). Under § 2402(c), circumstances tending to show unsuitability include: (1) the facts of the commitment offense, where the offense was committed in an especially heinous, atrocious, or cruel manner; (2) the prisoner's previous record of violence; (3) a history of unstable relationships with others; (4) commission of sadistic sexual offenses; (5) a lengthy history of severe mental problems related to the offense; and (6) serious misconduct while in prison. Circumstances tending to show suitability include: (1) lack of a juvenile record; (2) reasonably stable relationships with others; (3) the prisoner has shown remorse; (4) lack of significant history of violent crimes; (5) realistic plans for release; and (6) participation in institutional activities indicating an enhanced ability to function within the law upon release. See Cal. Code Regs., tit. 15 § 2402(d). The regulations are designed to guide the Board's assessment regarding whether the inmate poses an "unreasonable risk of danger to society if released from prison," and thus whether he or she is suitable for parole. In re Lawrence, 44 Cal.4th at 1202. There must be a rational nexus between the facts cited by the Board and the ultimate conclusion on dangerousness. See id. at 1227.

Regarding reliance on the facts of the commitment offense, the denial of parole may be predicated on the commitment offense only where the Board can point to factors beyond the minimum elements of the crime that demonstrate that, at the time of the suitability hearing, the inmate will present an unreasonable risk of danger to society if released. See In re Dannenberg, 34 Cal.4th at 1071. While the Board cannot require an inmate to admit guilt in order to be found suitable for parole, see Cal. Penal Code § 5011(b); 15 Cal Code Regs., tit. 15,

1 § 2236, the Board must consider the inmate's past and present attitude toward the crime and any lack of remorse or understanding of the nature and magnitude of the offense, see 15 Cal. Code Regs., tit. 15, §§ 2402(b), 2402(d)(3). "Lack of insight" is probative of unsuitability only to the extent that it is both demonstrably shown by the record and rationally indicative of the inmate's current dangerousness. See In re Calderon, 184 Cal.App.4th 670, 690 (2010).

In light of the precedents outlined above the court concludes that petitioner has a protected liberty interest in parole arising from state law. The court also concludes that the contours of the substantive guarantee required to protect that liberty interest are defined by state law and that under California law parole may not be denied unless there is "some evidence" of the inmate's dangerousness at the time of the parole eligibility hearing. Respondents' arguments to the contrary are rejected.

As to whether "some evidence" of petitioner's dangerousness in 2006 supports the denial of parole in this case, respondents argue:

> Here, the state court decision is not contrary to, nor an unreasonable application of, federal law. The Alameda County Superior Court considered the facts of the case and the rationale for the Board's decision. (Ex 4). The Court acknowledged that the nature of the offense alone may be sufficient to deny parole, but that the record in this case included more than only the commitment offense in support of the denial. (*Id.*). The record also consisted of Johnson's prior criminal history, disciplinary record, lack of involvement in drug and alcohol rehabilitation program, and his continuing minimization of his conduct and behavior regarding the second homicide. (*Id.*). The Court concluded that the Board's decision was not arbitrary or capricious, and that neither Johnson's due process or equal protection rights were violated. (*Id.*).

Respondents also argue that the state court's decision does not reflect any unreasonable determination of the facts.

The court agrees with respondents and finds that the state court's decision was neither an unreasonable application of California's "some evidence" standard, nor based on an unreasonable determination of the facts. In particular petitioner's recent history of disciplinary violations constituted some evidence of petitioner's dangerousness at the time of the 2006 parole

hearing. As the Board observed, there is a reasonable nexus between violation of institutional rules and the violation of the rules and laws of society as both show disregard for law, order, and safety. In addition, petitioner's failure to participate in alcohol and/or substance abuse programming constituted some evidence of dangerousness at the time given petitioner's history of drug and alcohol abuse and the role drugs and/or alcohol played in the commitment offenses. As with disciplinary violations, the Board was reasonable to concern itself with petitioner's failure to address issues relating to drugs and alcohol despite having been advised to do so at an earlier parole consideration hearing.

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that petitioner's petition for a writ of habeas corpus (Doc. 1) be denied and that all pending requests/motions be denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 12, 2010

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE